# DECISIONS

## IN

# CASES NOT REPORTED IN FULL.

Third Department, January Term, 1897.

Lukens Iron and Steel Company, Respondent, v. Benjamin N. Payne and David W. Payne, Appellants.— Order appealed from affirmed, with ten dollars costs and disbursements.— Landon, J.: In this appeal by the defendants themselves from the order denying their motion to vacate plaintiff's attachment, the defendants read in opposition·to the plaintiff's affidavits, above considered, their own affidavits to the effect that the chattel mortgage given by them to the Chemung Canal Bank was given in good faith and to secure payment to the bank of their debts honestly incurred and ,owing to it; that there was no agreement between defendants and the bank that the mortgage should not be filed, and denying that they told plaintiff's manager that if plaintiff sued them they would shut down and that the bank would take all their property, and denying their insolvency. Also, the affidavit of the president of the Chemung Canal Bank to the effect that the mortgage was taken in good faith to secure payment of defendants' indebtedness to the bank; that there was no understanding that the mortgage should not be filed, and no intention to aid defendants in any scheme to hinder, delay or defraud their creditors. On the part of the plaintiff additional affidavits were read, reiterating its moving allegations and giving details — not denying defendants' indebtedness to the bank — but giving facts tending to show that the bank was to keep the chattel mortgage a secret as long as it would be of assistance to defendants to do so, also showing more clearly defendants' insolvency —; its causes and duration. Upon all the evidence, we think the court below was justified in finding that the facts were substantially as alleged by the plaintiff, and, therefore, the order should be affirmed, with ten dollars costs and disbursements. All concurred.

Fred W. Parsons v. Benjamin N. Payne and Others (two appeals).— Order appealed from in each case affirmed, with ten dollars costs and disbursements.— Landon, J.: The plaintiff, a domestic creditor of defendants, obtained an attachment upon substantially the same facts as to the fraudulent transfers by defendants as are set forth in the appeals in *Lukens Iron & Steel Company* v. *Payne & Payne*. (See, *ante*, p 11.) Mrs. Land moved to set the attachment aside upon the moving papers and affidavits showing her subsequent lien. The defendants also moved to set it aside, and additional affidavits upon both sides were read. For reasons above stated as to the fraudulent character of the unfiled chattel mortgage, we affirm the order in each appeal denying the motion to vacate plaintiff's attachment, with ten dollars costs and disbursements in each appeal.

Sarah B. Rockwell and Mary A. Rockwell, as Executrices, etc., of William W. Rockwell, Deceased, Respondents, v. Abby M. Peck, as Executrix. etc., of Daniel Peck, Deceased, Appellant.—Judgment affirmed, with costs.—

Landon, J. : The defendant contends that upon the complaint no recovery could be had against her, except upon an accounting in respect to the property in question and of the proceeds thereof, and of the business carried on by Rockwell, Brisbin and Peck with it. We do not think this is so. The complaint, after reciting the details of the transactions resulting in vesting the title to the personal property in question in William W. Rockwell, the plaintiffs' testator, and Daniel Peck, the defendant's testator, alleges in substance that, in the spring of 1881, Rockwell and Peck were owners of the property, Rockwell having the prior right to receive $2,200 from it or its proceeds, and Peck having the sole ownership of the remainder, and that thereupon Rockwell and Peck made an agreement by which Peck should have the sole possession and management of the property with power of disposition; that he should manage and dispose of it promptly to the best advantage, and out of the proceeds pay Rockwell the $2,200 and interest due him, and that then Peck should be the sole·owner of what was left ; that the property was worth upwards of $4,000 ; that Peck, under this agreement, took sole possession of the property, sold and disposed of it all, but not promptly or in a business like way, and applied the proceeds to his own use and never paid Rockwell anything. The complaint does not allege that ·Peck did actually receive proceeds enough to pay Rockwell. For this breach of agreement by Peck, Rockwell was entitled to recover damages, and the measure of his damages was the loss the breach caused him. It would be unjust to permit Peck to waste or misapply the property and then be credited with the amount lost by such waste or misapplication.

The answer alleged that an accounting was necessary between Rockwell, Brisbin and Peck, but the evidence did not make a case for such accounting. Rockwell, Brisbin and Peck were separately accommodation indorsers upon the notes of Pope & Kellogg, the assignors of the property in question to them. Pope & Kellogg were manufacturers of shirts, collars and cuffs at Glens Falls. Rockwell's liability· as their indorser was $2,200, Brisbin's, $1,100, and Peck's, $2,600. Rockwell and Brisbin had a chattel mortgage upon the property as security for ·their respective indorsements, and Peck held a junior chattel mortgage as his security. Pope & Kellogg, May 26, 1881, in consideration of Rockwell's, Brisbin's and Peck's respective agreements each to pay the·notes upon which he was indorser, sold to them the tools, appliances and stock of their manufacturing business, the bill of sale stating that as between Rockwell, Brisbin and Peck, Rockwell·and Brisbin should first be paid out of the proceeds of the property, and the balance should belong to ·Peck. Each paid the notes indorsed by him. Immediately after their purchase, Peck, fear-